IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT JACKSON, JOSEPH McGRATH, and DERRELL SMITH<br><br>Plaintiffs,<br><br>v.<br><br>SHERIFF OF COOK COUNTY, COOK COUNTY, ILLINOIS and DIRECTOR, CERMAK HEALTH SERVICES,<br><br>Defendants. | No. 06 C 0493<br><br>HONORABLE DAVID H. COAR |

**MEMORANDUM OPINION AND ORDER**

Now before this court is the Motion to Certify Plaintiff Class filed by plaintiffs Robert Jackson ("Jackson"), Joseph McGrath ("McGrath"), and Derrell Smith ("Smith") (collectively "Plaintiffs") against Defendants Sheriff of Cook County ("Sheriff"), Cook County of Illinois ("Cook County"), and Director of Cermak Health Services ("Cermak") (collectively "Defendants"). For the reasons set forth below, Plaintiffs' motion for class certification is GRANTED.

**BACKGROUND[1]**

The instant Plaintiffs were admitted to the Cook County Jail as pre-trial detainees at varying dates,[2] where they were allegedly forced to undergo a screening test for sexually

---

[1] For the purposes of this motion, Plaintiff's well-pleaded allegations are taken as true. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179 (1974).

[2] Jackson was admitted on February 4, 2004, McGrath on December 27, 2005, and Smith on July 20, 2004.

-1-

transmitted disease ("STD screening"). Though some details of their accounts vary, the general process was the same in all cases. Upon arriving at the jail, Plaintiffs signed medical release forms and questionnaires as part of the admission procedure. One of these forms contained a "Consent for Treatment" decree, apparently signed by all three putative representatives, that read as follows:

> I consent to a medical and mental health history and physical including screening for tuberculosis and sexually transmitted diseases as part of the intake process of the Cook County Jail....[signed by prisoner].

*See* Resp. to Cert. Mot. Ex. A at 18, Ex. B at 16, Ex. C at 17. All admitted prisoners were lined up to enter an examination room within the medical intake area. Once inside, a medical technician from Cermak Health Services asked the prisoners to lower their pants. The technician would then insert a cotton swab into the tip of each prisoner's penis, apparently in order to collect a tissue sample for testing.[3] At all times, jail deputies were nearby, though it is not entirely clear where they were usually stationed with respect to the examination area.[4]

On January 27, 2006, Plaintiff Jackson filed a complaint alleging violation of his constitutional rights under the Fourth and Fourteenth Amendments pursuant to 28 U.S.C. § 1983. The Complaint was amended on January 31, 2006 to include additional Plaintiffs McGrath and Smith, and corrected on February 1, 2006. Plaintiffs in this case have now filed a motion for class certification. The putative plaintiff class consists of "[a]ll male prisoners at the Cook County Jail who, on and after January 27, 2004, was [sic] subjected to the non-consensual

---

[3]The particulars of this particular point in the process vary, as some accounts claim that: the swabbing was done over a garbage can; the technician failed to change his glove before administering the test to subsequent prisoners; and that either the prisoner held his own penis during the procedure or his penis was held by the technician.

[4]*See, e.g.*, Smith Dep. at 51 (placing the guard in the doorway of the room).

insertion of a swab into this penis as part of his admission to the jail." Cert. Mot. at 1. In support of their motion to certify the class, Plaintiffs have submitted fourteen (14) "Sworn Declarations" from men who had been admitted into the Cook County Jail.[5] *See* Cert. Mot., Ex. 1. These declarations rely upon roughly identical text to state their support of the class and the declarant's potential membership in it:[6]

> The undersigned, under penalties of perjury, certifies that the following statement are [sic] true:
>
> 1-2. [summary of individual's biographical information, including name, date of admission, CIMIS number, and age at the time]
>
> 3. On admission to the Cook County Jail, I was subjected to a procedure which I understand to be known as the insertion of a urethral swab into my penis.
>
> 4. I did not consent to this procedure [and tried to refuse].
>
> 5. I would not have agreed to undergo this procedure if I had been given a choice.
>
> 6. The procedure was painful and an embarrassing intrusion into a private part of my body.
>
> 7. I was in pain for [___] day(s) after the procedure.
>
> 8. The person who performed the procedure held my penis with his hand while inserting the swab.

*Id.*

---

[5] These declarations were made by: Kamal J. Davis, Troy O. Hampton, Lawrence A. Howard, Crasseros Jackson, Jerome Johnson, Thomas Kelly, Sylvester Kimbrew, Larry E. Lawson, Kevin McDuffie, Calvin K. Odisho, Vincent D. Papaccio, Leonard Pitman, Michael Rodriguez, and John O. Williams.

[6] Bracketed language indicates wording that varied from one declaration to another, or which was absent from one or more of the declations.

# LEGAL BACKGROUND

The federal Rules of Civil Procedure provide the federal district courts with broad discretion to determine whether certification of a class-action lawsuit is appropriate. *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). When evaluating a motion for class certification, the court accepts as true all well-pleaded allegations made in support of certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179 (1974); *Hardin v. Harshberger*, 814 F.Supp. 703, 706 (N.D.Ill. 1993). The party seeking class certification bears the burden of showing that the requirements for the class certification have been met. *Carlisle*, 417 U.S. at 179; *see also Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 480 (7th Cir.1980), cert. denied, 451 U.S. 914 (1981). Failure to establish any one of the requirements precludes class certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993).

Rule 23 of the Federal Rules of Civil Procedure governs the requirements of class certification. Under that rule, deciding a motion for certification requires a two-step analysis. First, the named plaintiff must satisfy the four threshold pre-requisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Second, the action must qualify under one of the three subsections of Rule 23(b); in this instance, the Plaintiffs seek to qualify under 23(b)(3), meaning they must establish that questions common to all members of the class predominate and that a class action would be the most effective approach to resolving the matter. In order to determine whether or not these criteria have been met, it is not appropriate to examine the substantive merits of the case itself. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (finding that the court deciding certification has no "authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether

it may be maintained as a class action"). Nonetheless, it is necessary to "make a 'preliminary inquiry...that has as its focus not the substantive strenth or weakness of the plaintiffs' claims but rather the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b).'" *Rahim v. Sheahan*, 2001 WL 1263493 at *10 (N.D.Ill. Oct. 19, 2001) (quoting Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001)).

## ANALYSIS

Because the Plaintiff have met all of the prerequisites of 23(a), as well as the criteria of 23(b)(3), their motion for class certification is GRANTED.

### *Numerosity*

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." This places a positive burden on the party seeking to certify the class to show that there are enough class members that it would not make sense to bring them all into court. Plaintiffs are not required to specify the exact number of class members. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978). An approximation of the proposed class size can be based on common-sense assumptions and estimates. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (D. Ill. 1996). However, failure to provide an estimate, or means for making such an estimate, can prove fatal to a certification motion. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (holding that plaintiffs "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity") (citing Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976)). While there is no set minimum number of plaintiffs required for class certification, Courts have generally recognized that joinder is impracticable where a class contains more than 40 members. *Johnson v. Rohr-Ville Motors, Inc.*, 189 F.R.D.

363, 368 (D. Ill. 1999) (citing Swanson v. Am. Consumer Indus., Inc., 415 F.2d 1326, 1333 (7th Cir. 1969).

Defendants are correct that Plaintiffs have not given this Court a definite idea of how many members its putative class will contain. At present, it is only clear from the record that seventeen current or former prisoners have a potential claim against Defendants; the three named Plaintiffs and the additional fourteen declarants.[7] While the definiteness of the total number of class members is a factor to consider in weighing considerations for or against certification, in this instance it is nonetheless clear that the putative class will be sufficiently large. As Plaintiffs previously stated, the alleged "invasive procedure has been applied to more than one thousand persons from January 27, 2004 to the present." Cert. Mot. at at 1. The class will likely expand to include nearly all prisoners admitted into the Cook County Jail within the Plaintiffs' proposed temporal range. Though somewhat variable due to prisoners who opt out, or unusual cases in which the roughly standardized procedures were not applied, it is clear that this putative class is sufficiently numerous for determining that certification would be more efficient than resolution through joinder or multiple legal actions.[8]

---

[7]Defendants maintain that because the supporting declarations use boilerplate language their veracity as personalized accounts is suspect and they should not be given significant weight. However, repeated language does not prove that the experience was not common to all of these declarants, and there was in fact some effort to individualize the declarations, e.g., the medical technician's approach, or the number of days of pain following the procedure, differed from one account to another.

[8] Plaintiffs' fourteen declarations were collected by contacting only three days' worth of prisoners admitted into the Cook County Jail. Cert. Mot. at 2-4; Resp. to Cert. Mot. at 5. Even if class membership were limited to prisoners who sign such a declaration, Plaintiffs have thus far gained an average of 4⅔ additional members for every considered day of admission into the jail. The proposed definition of the class, which would cover all prisoners admitted since January 27, 2004, would cover hundreds of days, and would therefore provide the requisite

Defendant maintains that a mailing was sent to all prisoners currently held in the Cook County Jail system. Plaintiffs admit that this is true. Reply in Supp. of Cert. Mot. at 4 . Defendant also argues that Plaintiffs have had adequate time to seek out declarants regarding the typicality of the allegations and have only had limited success in their efforts. Resp. to Cert. Mot. at 5. However, Plaintiffs failure to more definitely determine the ultimate size of the class, despite their time and effort, is not terminal. As stated above, this class action will likely include a large majority of prisoners who have had the screening process applied to them, and a sufficiently high number of class members to warrant the greater efficiency of the class action process. Because enough information has been provided to make this determination, Plaintiffs have relied on more than mere "conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *See Marcial*, 880 F.2d at 957. Rather, they have provided adequate information from which a large, if indefinite, number of class members can be discerned.

*Commonality/Typicality*[9]

Rule 23(a)(2) calls for the "existence of at least one issue of fact or law common to all class members." *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 622 (D. Ill. 1989). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)," *id.*, and under the rule the existence of some factual variation among class members will not defeat a class action, *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992).

---

numerosity.

[9]These two criteria are often analyzed together, *see Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992), as this Court now does.

Plaintiffs assert that there are several common questions of fact or law, namely:

> Is the procedure undertaken without consent? And, if so, is consent required by the Fourth and/or Fourteenth Amendments?
>
> Does the Procedure violate rights secured by the Fourth and/or Fourteenth Amendments?
>
> Is the manner in which the procedure is performed reasonably calculated to spread disease and, if so, is this a violation of rights secured by the Fourth and/or Fourteenth Amendments?

Pl.'s Cert. Mot. at 4-5. While there are some factual discrepancies among members of the putative plaintiff class, there are nonetheless common issues of fact and law to justify class certification.

Defendants rely too much on select factual determinations that might bary on a case-by-case basis, and which in some way might affect the screening process for individual putative class members. Rather than seeking to establish that the prisoner consent was valid in some instances and invalid in others, Plaintiffs maintain that, *as a rule*, the manner in which the screening process is conducted precludes valid consent: "Plaintiffs intend to show in their impending motion for summary judgment that the totality of circumstances at the receiving unit makes it impossible for anyone to give a valid consent to the insertion of the urethral swab." Pl.'s Reply in Supp. of Class Cert. at 11. This framing of the issue effectively shifts the debate toward questions that are resolvable without delving into an individualized analysis of minor factual discrepancies. *See, e.g., Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 955 (7th Cir. 2006) (upholding class certification despite member differences because the answers to the distinguishing question – the presence or absence of a firm offer – were not dispositive of the ultimate legal determinations).

Similarly, the class definition satisfies the demands of Rule 23(a)(3), which requires that the claims of the class representatives be typical of those of other class members. A typical claim arises "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Further, "similarity of legal theory may control even in the face of different facts." *Id.* Here, the underlying factual basis was the same for all prisoners admitted to the Cook County jail; they were all admitted and screened, and a variety of different factors may or may not have combined to invalidate the boilerplate consent that they gave. The legal argument that comes out of this is that the prisoners' constitutional rights under the Fourth and/or Fourteenth Amendments were violated. Despite minor difference in how the underlying process was executed, this indeed suffices to establish that all prisoners that underwent this screening share a common nucleus of facts, and that the Plaintiffs' legal theory would carry over to any of them.

*Representativeness*

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." This inquiry is generally broken into two component parts: (1) whether Plaintiff's counsel possesses the sufficient qualifications and experience to litigate a class action lawsuit in federal court; and (2) whether Plaintiff has interests that are antagonistic to or in conflict with those of other class members.

Defendant has not challenged the general adequacy of counsel in this case, and this Court sees no reason to doubt that it is adequate. Defendant does raise a question about the techniques used by Plaintiffs' counsel in finding their clients in this instance. Resp. to Cert. Mot. at 4.

However, this is unavailing – whether or not Plaintiffs were fully aware of their constitutional protections before they were approached by Mr. Flaxman and Mr. Morrissey has little to do with counsel's ability to zealously advocate for the entire class from this point forward.

In addition, there is nothing to indicate that the Plaintiffs' interests will be "antagonistic to those of the rest of the class." While Defendants make a great deal out of the Second Circuit's choice to consider Plaintiffs' credibility of individuals, Resp. to Cert. Mot. at 8-9, they have not advanced evidence of dishonesty that would make this Court question their ability to stand as class representatives. Defendants' suggestion that McGrath's status as an "admitted heroin addict" should make his credibility "highly suspect" is not convincing, *see* Resp. to Cert. Mot. at 9, particularly where class membership is made up entirely of prisoners, many of whom have a history of criminality and/or drug abuse.

### *Predominance of Common Questions*

Rule 23(b)(3), which provides the grounds for Plaintiffs' motion, requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). "The matters pertinent to the finding [under Rule 23(b)(3)] include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). In considering these

requirements, "the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of the trial on these isuses." *Rodriguez v. Ford Motor Credit Co.*, 2002 WL 655679 at *4 (N.D. Ill. Apr. 18, 2002) (citing Simer, 661 F.2d at 672)). "Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper." *Oshawa*, 225 F.R.D. at 584 (citing Rodriguez, 2002 WL 655679 at *4)).

The "predominant" question is whether or not Defendants unconstitutionally performed the screening process without achieving valid consent from the prisoners. Largely because of the manner in which Plaintiff has framed this question – as a categorical determination that applies to all individuals subjected to that process – there is no reason to think that minor factual discrepancies will counterbalance the importance of this overarching issue. The most difficult and all-encompassing question of consent, and Defendants' alleged nefarious intent, can be decided and applied to all potential members. These questions will predominate, addressing far weightier factual and legal issues than minor individual deviations from the standard jail practices in question.

The second part of 23(b)(1)(3) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." It is true that individualized factfinding with respect to each putative class member can undermine the potential benefits of class action status. *See Fisher v. Britol-Myers Squibb Co.*, 181 F.R.D. 365, 373 (N.D. Ill. 1998) (finding that there is little efficiency when court would need to engage in "extensive individualized proceedings regardless of whether we certify a class"); *Crato v. Estate of Kassel*, 63 F.R.D. 18 (S.D.N.Y. 1974) (finding certification of plaintiff class, or subgroups of a plaintiff

class, inappropriate in case of fraud because each member would be required to testify on the representations that were made to them).  However, in this instance the factual determination required in every given instance would be a relatively straightforward one; if the Plaintiffs successfully establish that the screening process was necessarily non-consensual, determining membership would be a simple matter of deciding who went through that process.  Any additional factual analysis of individual circumstances would be limited, as stated above.

Even if it were necessary to conduct a mini-hearing to establish that each of the individual putative class members was indeed subject to the practices outlined in Plaintiffs' allegations, which should not be the case, this would still be more efficiently done if this court is first able to categorically address the alleged unconstitutional process itself.  To rehear this same question for each prisoner defies logic, and the case therefore demands the efficiency of scale that Rule 23 provides.  As the matter is framed by Plaintiffs, membership in the class will be determined by whether or not a given prisoner underwent the STD screening.  This is well within the realm of reasonable membership determinations that courts of this circuit have found appropriate in the past.

This outcome is supported by the application of another, implicit requirement that this circuit has read into the explicit criteria of Rule 23; that the definition of the proposed class be "adequately defined and clearly ascertainable."  *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981). If Plaintiffs were in fact arguing that *some* of the prisoners admitted into the Cook County Jail had consented, the margins of that class would be subjective and difficult to determine without a thorough factual analysis of each prisoner's experience.  If that were the case, Plaintiffs would fail to meet the implicit criterion adopted by the Seventh Circuit.  *Id.*  However where, as here,

the Plaintiffs maintain that the process itself is constitutionally suspect, they have presented an issue that can and should be addressed categorically with respect to all similarly-situated prisoners.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is GRANTED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **December 14, 2006**